UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: KWOK,<br>*Debtors* | BANKR. NO. 22-50073 (JAM)<br>*Chapter 11* |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, and MEI GUO,<br>*Appellants*,<br><br>v.<br><br>LUC A. DESPINS,<br>*Trustee-Appellee.* | ADV. PRO. NO. 22-5003<br>CIVIL NO. 3:23-CV-458 (KAD)<br><br><br><br><br>AUGUST 23, 2024 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

In these consolidated appeals,[1] HK International Funds Investments (USA) Limited, LLC ("HK USA") and Mei Guo (collectively, "Appellants") challenge the orders of the Bankruptcy Court granting the Chapter 11 Trustee Luc A. Despins' ("Trustee" or "Appellee") motions for summary judgment in which the Bankruptcy Court determined first that the Individual Debtor Ho Wan Kwok (the "Individual Debtor" or "Kwok") was the beneficial owner of a luxury yacht, the Lady May, and second, that HK USA was the alter ego of the Individual Debtor such that the assets held by HK USA, to include the Lady May, the Lady May II, and $37,000,000 in loan proceeds, belonged to Kwok's bankruptcy estate. *See HK Int'l Funds Invs. (USA) Ltd., LLC v. Ho Wan Kwok (In re Kwok)*, No. 22-ap-5003 (JAM) (Bankr. D. Conn. Mar. 27, 2023), ECF No. 172; *HK Int'l Funds Invs. (USA) Ltd., LLC v. Ho Wan Kwok (In re Kwok)*, No. 22-ap-5003 (JAM) (Bankr. D. Conn. Mar. 31, 2023), ECF No. 183; *HK Int'l Funds Invs. (USA) Ltd., LLC v. Ho Wan Kwok (In*

---

[1] The Court previously consolidated this appeal with *In re Kwok*, 3:23-cv-690 (KAD) upon Appellants' motion on June 6, 2023. *See* ECF No. 19.

*re Kwok)*, No. 22-ap-5003 (JAM) (Bankr. D. Conn. May 18, 2023), ECF No. 221. For the reasons set forth below, the orders of the Bankruptcy Court are AFFIRMED.

**Facts and Procedural History**

The Court presumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant appeal.

Ms. Guo, daughter of the Individual Debtor in the underlying bankruptcy proceeding, was twice a political prisoner in China. Upon her release from detention in 2015, her brother, Mileson Guo, purchased and named a yacht, the Lady May, for Ms. Guo. Mileson Guo purchased the Lady May through Hong Kong International Funds Limited ("HK International").

In May 2017, Ms. Guo traveled to the United States, where she has remained. Control and ownership of HK International was transferred to Ms. Guo. In September 2018, HK USA was formed. Ms. Guo transferred the Lady May from HK International to HK USA in April 2020. Prior to the transfer, in April 2019, Ms. Guo was identified as HK USA's sole member. After the transfer, HK USA's only asset was the Lady May (and the Lady May II, a small "runner" boat for the Lady May).

In April 2017, Pacific Alliance Asia Opportunity Fund, L.P. ("PAX") filed a breach of contract action against the Individual Debtor in New York Supreme Court. Ms. Guo and HK USA were not parties to that action. PAX alleged that it had loaned money to an entity controlled by the Individual Debtor, the entity failed to pay the loan back, and that the Individual Debtor was personally liable for the loan under the terms of a personal guarantee.

On September 15, 2020, the New York Supreme Court (Ostrager, J.) entered summary judgment in favor of PAX and awarded it approximately $116 million. On September 30, 2020, the New York Supreme Court entered a post-judgment restraining order against the Individual

Debtor to prevent the dissipation of assets or frustration of any future judgment. The restraining order did not explicitly reference HK USA or the Lady May and the order was not served on HK USA or Ms. Guo. On or about October 9, 2020, the Lady May left New York and traveled to Florida. On October 15, 2020, the New York Supreme Court entered a second post-judgment restraining order against the Individual Debtor; this time, the order was directed at the Individual Debtor as well as the registered owners of the Lady May.

On November 18, 2020, PAX filed a letter informing Justice Ostrager that, based on publicly available information, the Lady May had sailed to the Bahamas in violation of the second restraining order. On December 24, 2020, PAX requested that the Individual Debtor be held in contempt because the Lady May left the jurisdiction. Ms. Guo became aware of this order in or around December 2020.

On January 15, 2021, Justice Ostrager held a hearing on the motion for contempt during which he heard evidence from witnesses to determine whether the owners of the assets at issue—to include the Lady May—were alter egos of the Individual Debtor such that they would be available to satisfy the judgment owed to PAX. The testifying witnesses were represented by counsel at the hearing.

On March 16, 2021, Justice Ostrager held the Individual Debtor in contempt and ordered that the Lady May be returned to New York by May 15, 2021. Justice Ostrager found that "there had been an intolerable amount of gamesmanship, dissembling, and deceit in proceedings before this Court relating to the whereabouts and ownership of the yacht 'Lady May.'" Justice Ostrager further ordered that if the Lady May was not returned, the Individual Debtor would be assessed a $500,000 daily fine. The Individual Debtor appealed the contempt order.

On July 8, 2021, PAX moved for a final entry of contempt to address ongoing violations of the March 2021 contempt order. Counsel for HK USA, Attorney Lee Vartan, who is also counsel to Appellants before the Bankruptcy Court and this Court, filed an opposition to the final contempt motion, which raised a question regarding the ownership of the Lady May. On July 21, 2021, the Court convened a preliminary hearing on the final contempt motion. Attorney Vartan appeared on behalf of HK USA.

On November 9, 2021, the New York Appellate Division denied the Individual Debtor's appeal of the March 2021 contempt order, holding that Justice Ostrager acted within his discretion in holding the Individual Debtor in contempt and that the contempt had been established by clear and convincing evidence. However, the Appellate Division ordered an evidentiary hearing to "resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties."

Justice Ostrager held a remote evidentiary hearing on February 2, 2022. Attorney Vartan appeared as counsel to Ms. Guo and HK USA. Ms. Guo was a witness at the hearing. The Individual Debtor did not testify; rather, he chose to invoke his Fifth Amendment right against self-incrimination. On February 9, 2022, Justice Ostrager again held the Individual Debtor in contempt. Justice Ostrager found that Ms. Guo was not credible in any respect, was aware of the restraining order and the order directing that the Lady May return to New York, and that Ms. Guo retracted her testimony that her brother had given her the yacht. Justice Ostrager found that PAX's rights and remedies were prejudiced because it could levy on the Lady May and that the Individual Debtor had a beneficial interest in the Lady May. Justice Ostrager assessed another $134 million against the Individual Debtor and in favor of PAX based on the daily fine.

Soon after Justice Ostrager's contempt decision, the Individual Debtor filed for Chapter 11 bankruptcy in the District of Connecticut. On April 10, 2022, the Individual Debtor filed a

4

proposed reorganization plan, which provided for the liquidation of the Lady May for the benefit of his creditors and to secure releases for HK USA, among other entities.

On April 11, 2022, HK USA initiated an adversary proceeding against the Individual Debtor and PAX to establish its ownership of the Lady May. On April 29, 2022, before the Trustee was appointed, HK USA, the Individual Debtor, the Official Committee on Unsecured Creditors, PAX, and two other creditors jointly filed a stipulation in which the parties agreed that HK USA would return the Lady May to the navigable waters of Connecticut. Before the stipulation was docketed, HK USA deposited $37 million into escrow pursuant to an escrow agreement with U.S. Bank National Association. HK USA obtained the $37 million from a loan on April 19, 2022 from Himalaya International Financial Group Limited ("Himalaya"); the expectation being that the escrow would be immediately repaid to Himalaya upon the return of the Lady May to the United States.

The stipulation provided that if, *inter alia*, HK USA secured the return of the Lady May and HK USA established a repair reserve, the escrow funds would be returned to HK USA for repayment of the loan (provided that PAX, the Official Committee on Secured Creditors, the Individual Debtor, or the Office of the United States Trustee did not file an objection). The intent of the stipulation was to allow the Individual Debtor's creditors to pursue the Lady May, or the escrow funds, if the Lady May was not returned as required under the stipulation.

On September 23, 2022, the Trustee, now in the shoes of the Individual Debtor, answered HK USA's complaint in the adversary proceeding. The Trustee asserted five counterclaims to include: (1) that the Lady May is the property of the bankruptcy estate based on the New York Court's decision and the doctrine of collateral estoppel, (2) that HK USA's property, to include

5

the Lady May and the $37 million in escrow, is the property of the bankruptcy estate based on a theory that HK USA is the alter ego of the Individual Debtor.

On March 27, 2023, the Bankruptcy Court granted the Trustee's partial motion for summary judgment on his first counterclaim finding that the Lady May was property of the bankruptcy estate, in part, based upon the New York Court's contempt decision. On May 18, 2023, the Bankruptcy Court granted the Trustee's partial motion for summary judgment on his second counterclaim finding that HK USA is the alter ego of the Individual Debtor and that the Lady May and the $37 million held in escrow are property of the bankruptcy estate. Both orders were timely appealed to this Court.[2]

**Discussion**

*Jurisdiction*

Districts courts have jurisdiction to hear appeals from "final judgments, orders, and decrees . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). "The decision as to whether to grant leave to appeal an interlocutory order of a bankruptcy court is committed to the discretion of the district court." *Osuji v. U.S. Bank, N.A.*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018) (citing *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003). The standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from district courts to courts of appeals, similarly governs such interlocutory appeals from bankruptcy courts to district courts. *In re Quigley Co.*, 323 B.R. 70, 77 (S.D.N.Y. 2005) ("[C]ourts in this Circuit have invariably held[ ] all appeals governed by Section 158(a)(3) . . . should refer to the

---

[2] The appeal of the order granting summary judgment as to the first counterclaim would be rendered moot if the order granting summary judgment on the second counterclaim is affirmed, as the alter ego analysis necessarily subsumes the "beneficial owner" analysis or the Bankruptcy Court's application of the doctrine of collateral estoppel. Appellants disagree and posit that the alter ego analysis is inextricably tied to and dependent upon the collateral estoppel analysis in the ruling on the first counterclaim, thus requiring appellate review as to both rulings. As discussed above, the Court rejects this argument, but nonetheless address the propriety of the first ruling in the alternative.

standards articulated by Section 1292(b) to determine whether leave to appeal shall be granted." (citation omitted)). Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Accordingly, Appellants must establish that "the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Osuji*, 285 F. Supp. 3d at 558; *see also In re Salvatore*, No. 3:18-cv-1429 (SRU), 2019 WL 1284815, at *1 (D. Conn. Mar. 20, 2019).

The first inquiry is satisfied "if the reversal of the bankruptcy court's order would (1) terminate the action or (2) materially affect the outcome of the litigation." *In re Salvatore*, 2019 WL 1284815, at *2 (quoting *Buckskin Realty Inc., v. Greenberg,* 552 B.R. 40, 44 (E.D.N.Y. 2016)). "The question of law must be a pure question that does not require resort to the case docket for study." *Id.* at *2. The second inquiry is satisfied where there is either conflicting authority on the issue or the issue is particularly difficult and of first impression in the Second Circuit. *Osuji*, 285 F. Supp. 3d at 558. Alternatively, there must be "a genuine doubt as to whether the bankruptcy court applied the correct legal standard. . . . [M]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *In re Salvatore,* 2019 WL 1284815 at *2. The third inquiry is satisfied "when the appeal promises to advance the time for trial or to shorten the time required for trial." *Id.* Further, district courts have "unfettered discretion to deny certification of an order for interlocutory appeal even when a party

7

has demonstrated that the criteria of [section] 1292(b) are met." *Buckskin Realty Inc.*, 552 B.R. at 44.

As both parties acknowledge, there has not been a final disposition in the adversary proceeding on the Trustee's remaining three counterclaims. The Bankruptcy Court denied without prejudice the Trustee's motion to certify the two summary judgment orders as final pursuant to Federal Rule of Civil Procedure 54(b). Both parties agree that the Court should construe the notices of appeal as motions for leave to appeal pursuant to § 158(a), and principally argue that this appeal will advance the time for trial or shorten the time required for trial. *In re Salvatore,* 2019 WL 1284815 at *2. The Court agrees. Although there are counterclaims outstanding, for all practical purposes, the Trustee has achieved all the monetary relief he sought through his counterclaim, and the appeal presents pure questions of law. Given the somewhat unsettled nature of the law at issue, and the multi-factorial nature of the requisite analysis, the Court can and does conclude that there is a substantial ground for difference of opinion as to the law's application to the circumstances presented here. Accordingly, the motions for leave to appeal are granted and the Court will proceed to the merits of the appeal.

**Standard of Review**

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).

*Alter Ego – The Second Counterclaim*

8

The Court begins with the Bankruptcy Court's order holding that HK USA is the alter ego of the Individual Debtor, which is based partially on the Bankruptcy Court's first summary judgment order holding that Appellants are collaterally estopped from contesting Justice Ostrager's finding that the Individual Debtor was the beneficial owner of and controlled the Lady May. Appellants argue that the Bankruptcy Court erred in the alter ego determination because the decision was based on a flawed collateral estoppel analysis and cannot stand independent of that analysis, that the Bankruptcy Court otherwise erred in its alter ego analysis, and that the Bankruptcy Court erroneously determined that certain facts were undisputed or found that certain undisputed facts implicated the Individual Debtor. Appellee disagrees, arguing that the Bankruptcy Court correctly determined that HK USA was the alter ego of the Individual Debtor not simply as an extension of the collateral estoppel finding, but because of the undisputed facts in the record that the Individual Debtor, *inter alia*, exercised dominion and control over HK USA. The Court agrees with the Appellee.

HK USA is a limited liability company incorporated in Delaware. "[W]hen a limited liability company is incorporated in another state, our statutes mandate application of the laws of that foreign state." *Weber v. U.S. Sterling Sec., Inc.*, 282 Conn. 722, 730 (2007); *see also Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders").

The second counterclaim sought to reverse pierce the corporate veil between the Individual Debtor and HK USA. *See Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021). Because the Trustee, who had stepped into the Individual Debtor's shoes in order to bring property into the bankruptcy estate, *see* 11 U.S.C. § 514(a)(1), sought to pierce the corporate

9

veil between the Individual Debtor and HK USA, the situation presented was one of insider veil-piercing. "Insider reverse veil-piercing is implicated where 'the controlling [member] urges the court to disregard the corporate entity that otherwise separates the [member] from the corporation.' Outsider reverse veil-piercing is implicated where 'an outside third party, frequently a creditor, urges a court to render a company liable on a judgment against its member.'" *Manichaean*, 251 A.3d at 710 (internal citations omitted) (modifications in original). Insider veil piercing has not yet been endorsed by Delaware courts. *Manichaean*, 251 A.3d at 714. "Where state law is unsettled, we are obligated to carefully predict how the state's highest court would resolve the uncertainty or ambiguity. Absent a clear directive from a state's highest court, federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (cleaned up).

"Delaware embraces and will protect 'corporate separateness'; but Delaware will not countenance the use of the corporate form as a means to facilitate fraud or injustice." *Manichaean*, 251 A.3d at 713. Thus, in recognizing outsider reverse veil-piercing, the Delaware Chancery Court directed courts to first consider the traditional "alter-ego" factors and then examine whether the corporate form is being used to perpetrate fraud or an injustice. *Id.* As to this latter inquiry, the Delaware Chancery Court articulated the following non-exhaustive factors for courts to consider:

> (1) the degree to which allowing a reverse pierce would impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct of the insider that gave rise to the reverse pierce claim, and the degree to which allowing a reverse pierce would establish a precedent troubling to shareholders generally; (2) the degree to which the corporate entity whose disregard is sought has exercised dominion and control over the insider who is subject to the claim by the party seeking a reverse pierce; (3) the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider, or to that person's reasonable reliance upon a lack of separate entity status between the insider and the corporate entity; (4) the degree to which the public convenience, as articulated by [the Delaware General Corporation Law and Delaware's common law], would be served by allowing a reverse pierce; (5) the extent and severity of the wrongful conduct, if any, engaged in by the

10

corporate entity whose disregard is sought by the insider; (6) the possibility that the person seeking the reverse pierce is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief; (7) the extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach; and (8) the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt.

251 A.3d at 715. Because "[f]undamentally, reverse veil-piercing, like traditional veil-piercing, is rooted in equity, [] the court must consider all relevant factors . . . to reach an equitable result." *Id*. The Bankruptcy Court applied and analyzed the *Manichaean* factors in concluding that HK USA is the alter ego of the Individual Debtor and that reverse veil piercing is appropriate. On appeal, Appellants do not argue that the Court should not recognize insider veil piecing, or that the articulated factors in *Manichaean* would not apply to such a situation. Rather, Appellants assert that *Manichaean* only applies in situations where liability is sought to be imposed on an entity's identified and documented owner/member, which undisputedly is not the Individual Debtor vis a vis HK USA.

The Court concludes that there is no genuine issue of material fact that HK USA is the alter ego of the Individual Debtor and that reverse veil piercing is appropriate under the circumstances here. In so holding, the Court concludes that the Bankruptcy Court's order stands independent of the collateral estoppel finding and that the collateral estoppel finding is not necessary to the alter ego determination.

Significant to the Court's conclusion are the following undisputed facts:

- HK USA has no business purpose other than owning the Lady May and the Lady May II;
- HK USA has generated no revenue, has had no directors, officers, or employees, has not filed tax returns, has had no bank account and has not otherwise been capitalized; yet operates and maintains the Lady May at a cost of approximately $100,000 per month;
- HK USA has maintained no documents or business records other than those that relate to the operation of the Lady May. And there was undisputed testimony that the Individual Debtor, and not Ms. Guo, had the benefit of the use of the Lady May;

11

- As discussed above, the Individual Debtor leveraged the Lady May as an asset in support of the proposed plan of reorganization at the inception of his bankruptcy case;
- HK USA shared office space with the Individual Debtor's counsel, the Kwok family's office controlled by the Individual Debtor's son, a property holding company controlled by the Individual Debtor's wife, and other business entities tied to the Individual Debtor. Finally, the Individual Debtor and HK USA utilized the same address, which was listed on the Individual Debtor's Chapter 11 Petition.

Moreover, after the Bankruptcy Court held that Appellants were collaterally estopped from contesting the issue of ownership over the Lady May, the Trustee discovered that HK USA also owned the Lady May II. Indeed, as she testified at the final contempt hearing before Justice Ostrager, Ms. Guo was apparently unaware that HK USA owned the Lady May II and she believed that her brother owned the Lady May II, thus bolstering the conclusion that the Individual Debtor, not Ms. Guo, exercised dominion and control over HK USA.

In short, HK USA had no identifiable purpose other than to own the Lady May and the Lady May II, which itself was held for the benefit of the Individual Debtor and it functioned to improperly shield the Individual Debtor's debts from his creditors.

The Court concludes that the Bankruptcy Court appropriately found that these undisputed facts fit comfortably within the framework articulated by the Delaware Chancery Court in *Manichaean*. Each factor favors reverse veil piercing so as to bring these assets into the bankruptcy estate. The Individual Debtor exercised dominion and control over HK USA; this dominion and control contributed to shielding the assets of HK USA from the bankruptcy estate; there are no innocent shareholders of HK USA who will be adversely impacted by the reverse veil piercing; and the Individual Debtor's creditors will gain additional protection through the bankruptcy estate.

The Court rejects Appellants' argument that a documented direct relationship between the Individual Debtor and HK USA, such as that of a wholly owned subsidiary, is necessary to establish alter ego status or to reverse pierce HK USA's corporate veil. First, *Manichaean* contains

no such limitation, *see id.* at 714 ("reverse veil piercing can act as a deterrent to owners of companies, particularly those that are closely held, from shuffling their assets among *their controlled entities,* with the express purpose of avoiding a judgment") (emphasis added), and makes clear that a broader factorial analysis is required. Further, although such a direct relationship may be persuasive evidence on the issue of whether an entity is the alter ego of an individual, Delaware law in this regard is more flexible than Appellants posit. *See Official Comm. of Unsecured Creditors v. Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.)*, 178 B.R. 956, 974–75 (D. Del. 1994) (direct corporate relationship not necessary for alter ego finding because then "such alter ego claims can be defeated and defendants can insulate themselves from liability by using corporate intermediaries and other complex business structures, thereby indirectly doing that which lawfully cannot be accomplished directly"). The Court concludes therefore that there is no genuine issue of material fact that the Individual Debtor and HK USA operated as a single economic entity and that HK USA is the alter ego of the Individual Debtor. Accordingly, the Bankruptcy Court's order granting summary judgment on the second counterclaim is AFFIRMED.

*Collateral Estoppel – First Counterclaim*

Having concluded that the Bankruptcy Court's order on the Trustee's second counterclaim subsumes the Trustee's first counterclaim, and having further concluded that the Bankruptcy Court's grant of summary judgment was appropriate, the Court observes that the appeal of the first ruling is moot. *See supra* n.2.

That said, even if, the collateral estoppel finding was integral to the alter ego decision, the Court concludes that the Bankruptcy Court correctly held that the Appellants are collaterally estopped from contesting that the Individual Debtor is the beneficial owner of the Lady May. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so. . . ."

13

*Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738 (1982)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56 (1985)). "Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Evans*, 469 F.3d at 282.

Appellants seek to narrow the scope of the New York Appellate Division's remand, thereby narrowing the preclusive effect of the decision which followed. Appellants also inaccurately minimize the extent to which they participated in the proceedings in the New York Supreme Court, as well as the nature and breadth of the proceeding. Appellants' argument is belied by the record.[3]

On remand, the Appellate Division directed Justice Ostrager "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties." Thus, the issue over the ownership and control of the Lady May, indisputably the only asset (at the time) and indeed, the only purpose for which HK USA existed, was squarely before Justice Ostrager. There simply was no mystery as to the nature of the factual determinations to be made. The Appellate Division could not have been clearer. As such, there is no question that the "identical issue necessarily was decided in the prior action and is decisive of the present action." *Evans*, 469 F.3d at 281. Moreover, it is equally clear that Appellants received "a full and fair opportunity to litigate the issue in the prior action." *Id.* Attorney Vartan appeared

---

[3] Although Appellants were not parties to the New York litigation, their alignment with the Individual Debtor's interests and effort to advance identical positions, *i.e.*, that HK USA, and not the Individual Debtor, was the owner (beneficial and otherwise) of the Lady May, render Appellants sufficiently in privity with the Individual Debtor to implicate collateral estoppel. *See Watts v. Swiss Bank Corp.,* 27 N.Y.2d 270, 277 (1970) (privity between parties exist between "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interest are represented by a party to the action, and possibly coparties to a prior action.").

at the hearing on behalf of Ms. Guo and HK USA. The Individual Debtor submitted a declaration from Ms. Guo. Attorney Vartan represented most of the witnesses who appeared and made evidentiary objections during those witnesses' testimony. Counsel for the Individual Debtor and Appellants were paid by the same company, which has also been linked to the Individual Debtor. Ms. Guo was present and testified at the hearing. Appellants were not prevented in any manner from participating fully in the hearing and did not challenge the scope or nature of the hearing at the time. To the contrary, they were able to participate in the fact-finding process, and did so.[4] The Court concludes that there is no genuine issue of material fact that Appellants were afforded a full and fair opportunity to litigate the issue of the ownership of the Lady May and that the identical issue of ownership was necessarily decided in the New York Supreme Court. As such, Appellants were properly precluded from seeking to relitigate the issue in the adversarial proceeding under the doctrine of collateral estoppel and the Bankruptcy Court's ruling on Trustee's first counterclaim is alternatively AFFIRMED on this basis.

**Conclusion**

For the foregoing reasons, the Court AFFIRMS the order of the Bankruptcy Court granting summary judgment in favor of the Trustee on his second counterclaim and should it be determined that the appeal of the decision on the first counterclaim is not moot, in the alternative, AFFIRMS the order of the Bankruptcy Court granting summary judgment in favor of the Trustee on his first counterclaim. The Clerk of the Court is directed to enter judgment in favor of Appellee and close this case.

---

[4] The Court has reviewed the transcript of the remand hearing before Justice Ostrager. Appellants' argument that their level of participation was inadequate to constitute a full and fair opportunity to be heard is factually unsupported and especially troubling given that Appellants' counsel was present and an active participant in the hearing.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of August 2024.

                                                 */s/ Kari A. Dooley*
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE